# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:  20CV02702

**KATELYN SCHILLER,**

     Plaintiff;

v.

**COLORADO STATE UNIVERSITY;**

**SPECTRA;**

**KARLA LEWIS;**

**MICHAEL BEST; and**

**SCOTT SCHELL;**

     Defendant(s).

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff, by and through undersigned counsel, Baumgartner Law, L.L.C., and hereby respectfully submits this Complaint against the Defendants and allege and aver as follows:

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; 42 U.S.C. § 1988; 20 U.S.C. § 1681-1688 (Title IX of

the Education Amendments of 1972); 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964); and 29 U.S.C. 701 and 794 (Section 504 of the Rehabilitation Act of 1973). Jurisdiction is founded upon 28 U.S.C. § 1331, §1343(a)(3) and (4) and the aforementioned statutory and constitutional provisions.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts, and/or omissions giving rise to this action occurred in Colorado.

## II.  **PARTIES**

3. Plaintiff, Katelyn Schiller ("Plaintiff"), is and was at all relevant times a resident of the State of Colorado residing in Fort Collins, Colorado.

4. Defendant Colorado State University is a public university located in Fort Collins, Colorado and receives federal financial assistance within the meaning of 20 U.S.C. § 1681-1688.

5. Defendant Spectra ("Spectra") is a Pennsylvania-based entertainment company. Spectra is principally owned by Comcast Spectacor, a Pennsylvania-based corporation licensed to transact business in the State of Colorado with its principal place of business address as 3601 South Broad Street, Philadelphia, Pennsylvania 19148. Spectra provides food and drink services to Colorado State University at its football stadium.

6.  Defendant Michael Best ("Best") is and was at all relevant times a resident of the State of Colorado residing at 10227 Hexton Court, Lone Tree, Colorado 80124.

7.  Defendant Scott Schell ("Schell") is and was at all relevant times a resident of the State of Colorado residing at 4448 Cedarpoint Place, Highlands Ranch, Colorado 80130.

8.  Defendant Karla Lewis ("Lewis") is and was at all relevant times a resident of the State of Colorado residing at 1729 Matthews Street, Fort Collins, Colorado 80525. At all relevant times hereto, Defendant Lewis was acting within the course and scope of her employment as a Manager of Spectra.

## III.  GENERAL ALLEGATIONS

9.  At the time of the incidents subject to this complaint, Plaintiff was a 19-year-old undergraduate student at Colorado State University, who was working for Spectra part time as a server at CSU football games.

10. Plaintiff was assigned to serve the high-value, financially well-off patrons who watched the CSU football games from "loge boxes," which are outdoor private seating areas with controlled access. This server position was desirable because Plaintiff earned most of her income from tips, and because she was able to interact with successful members of the community, many of whom were CSU alumni.

11. On September 5, 2019, Plaintiff was working for Defendant Spectra as a server in a loge box that had been reserved for the season by successful CSU alumni, Defendant Michael Best, and his wife, Susie Wargin. During this and subsequent games, the couple invited friends to sit in the area to watch the games with them.

12. On September 5, 2019 during the course of the football game, Defendant Michael Best grabbed Plaintiff several times, including grabbing her by the extreme upper thigh immediately adjacent to her vagina, causing her bruises. In addition, Defendant Best, who was highly intoxicated at the time of this interaction, dragged Plaintiff around the box, calling her and her co-worker "bitch." Defendant Best's inappropriate sexual advances and physical assaults were non-consensual. His use of profanity while doing so caused Plaintiff to be intimidated and scared.

13. Immediately after this incident, Plaintiff informed her employer, Defendant Spectra, about the unwanted sexual touching, sexual harassment, and assaults that were occurring in the private seating area. Although Defendant Spectra acknowledged the complaint, no action was taken to remedy the complaints, or to prevent future incidents.

14. Plaintiff also learned that Defendant Best and the guests at his loge box had committed similar acts against other young girls at football games in the past, and that no action had been taken by Defendant Spectra or Defendant CSU.

15. On September 21, 2019, Plaintiff was again assigned to serve Defendant Best's private box. Once again, Defendant Best became highly intoxicated and began touching Plaintiff's body in an aggressive and sexual manner close to her private parts. Defendant Best's inappropriate sexual advances and assaults were non-consensual.

16. Plaintiff immediately notified her supervisor of the unwanted sexual touching and sexual harassment. No action was taken by Plaintiff's employer to prevent further sexual harassment by Defendant Best.

17. On October 5, 2019, Plaintiff was once again assigned to serve Defendant Best's private box during a CSU football game despite her repeated complaints. Once again, Defendant Best became intoxicated and began touching Plaintiff in a sexual manner. Defendant Best's inappropriate sexual advances and physical touching were non-consensual.

18. At the same football game, Defendant Schell, who was a guest in Defendant Best's private box and who was also highly intoxicated at the time, began touching Plaintiff in a sexual manner, caressing her hips, touching her inner thigh, putting his hands in Plaintiff's pockets and reaching his fingers into Plaintiff's pubic area directly above her vagina.

19. In addition, Defendant Schell grabbed Plaintiff by the back of her neck and directed her around the private box.

20. Immediately after the October 5, 2019 incident, Plaintiff again informed her employer, Defendant Spectra, of the unwanted sexual advances and harassment by both men. Defendant Spectra did not attempt to extricate Plaintiff from this unwanted and dangerous situation, instead allowing Defendants Best and Schell to continue groping Plaintiff throughout the rest of the October 5, 2019 football game.

21. On October 23, 2019 Plaintiff attended a meeting with Defendant Spectra, CSU Deputy Athletics Director, Steve Cottingham and Defendant Lewis regarding the continued sexual assaults and harassment occurring at work and on the premises of Colorado State University.

22. At this meeting, Defendant Spectra, through Defendant Lewis, stated that it was very well aware of the sexual assault and harassment reported by Plaintiff, including the specific previous instances mentioned herein.

23. On October 30, 2019, Plaintiff attended a second meeting with Defendant CSU, Defendant Spectra, Defendant Lewis and Steve Cottingham. At this meeting, Plaintiff learned that Steve Cottingham and Defendant Lewis had already decided that Defendant Spectra would continue serving alcohol to Defendant Best and his guests. In fact, Plaintiff learned that Defendant Best was going to be upgraded from a "loge box" to a Presidential Suite for future football games.

24. At this meeting, Steve Cottingham stated to Plaintiff that nobody with Defendant Best's "sort of financial commitment" to the university had ever been "sanctioned" like that before.

25. After the October 30, 2019 meeting, Plaintiff sent an email to Defendants Spectra and CSU expressing her shock and anger not only that Defendants Spectra and CSU would continue to serve Defendant Best alcohol at future CSU football games, but that Defendant Best would actually be rewarded with an upgraded private seating area to watch games from.

26. When Defendant Best's wife, Susie Wargin, learned of the assaults committed by her husband and their friends, and the complaints made by Plaintiff, Ms. Wargin immediately began to use financial pressure to force the University to take illegal retaliatory action, which it eventually did take.

27. On October 30, 2019, Susie Wargin sent an email to Steve Cottingham and the CSU Athletics Director, David Crum. Ms. Wargin expressed anger that Plaintiff was not removed immediately from her employment due to her complaint. She went on to write, "I write a lot of checks to Athletics and the University. We have been nothing but stand up alums and supporters for decades." She continued, "I know you have a lot on your plate. We are one of many items, however we are also friends."

28. At one point after the complaints were made to the University, Defendant Lewis approached Plaintiff about the several incidents and stated that "it was [the university's] decision to do whatever they are going to do with [Defendant Best]."

29. On October 31, 2019, Plaintiff sent an email to Defendant CSU, Defendant Spectra, Defendant Lewis and Steve Cottingham expressing her shock and anger that Defendant Best would not be punished or removed from the football stadium, that he would continue to be served alcohol, that Plaintiff would continue to have to serve him and his guests, and that Defendant Best and Susie Wargin would be rewarded with an upgraded private box instead of receiving some kind of discipline.

30. Subsequently, Defendant Lewis informed Plaintiff that she had discussed the situation with Steve Cottingham, and it had been decided that Plaintiff could continue to work for Defendant Spectra, but she would be demoted to a lesser position with significantly less ability to earn income. Specifically, Defendant Lewis informed Plaintiff that she would have to work in the "pantry" stocking the items she previously served to guests and assisting servers. She would no longer interact with guests or her friends who also worked as servers, and she would no longer receive tips. This decision was made by Defendant Lewis, Defendant Spectra and Steve Cottingham together.

31. Plaintiff resigned her position with Defendant Spectra as a result of her constructive termination rather than being reassigned to a significantly lesser role where she would earn less income.

32. The decision to demote Plaintiff to a lesser position within the organization amounts to a constructive termination because the demotion by Defendant Spectra and Defendant Lewis would lead any reasonable person to believe that her tenure has been terminated.

33. The CSU Police Department was contacted regarding the above incidents of sexual assault and harassment. A criminal investigation was initiated by the Colorado State University Police Department and Detective Sean Fitzpatrick was assigned to investigate the case.

34. After the investigation, the criminal case was presented to the District Attorney for the Eighth Judicial District, Amanda Duhon, for a felony filing decision. The matter was screened on two separate occasions.

35. District Attorney Duhon stated that "the SVU team unanimously felt that while we do find the victim credible and that she was subjected to unwanted sexual contact, we do not believe the case can be proven beyond a reasonable doubt if the case was filed and proceeded to trial."

36. District Attorney Duhon stated that the reason a conviction was not likely was because there was a delay between the dates of the offense and the reporting of the incidents to CSUPD. In addition, District Attorney Duhon stated that "despite the fact that the athletics department was aware of the complaint, any possible video of the incidents had

not been retained." District Attorney Duhon went on to state that surveillance video footage could have helped to secure a conviction against Defendant Best, but the evidence was destroyed by CSU Athletics. Finally, District Attorney Duhon states that "if the incidents were reported to CSUPD promptly" by CSU Athletics, it is possible the case could have been prosecuted.

37. Based on this statement, it is clear that CSU Athletics, in coordination with Defendant Spectra, Defendant Best, and Susie Wargin, destroyed the crucial video evidence of the assaults.

38. As a result of the harassment, assaults, and the retaliation by Defendant Best, Ms. Wargin, Defendant Spectra, Defendant Lewis, Mr. Cottingham, and Defendant CSU, Ms. Schiller had to postpone her academic pursuits, including missing classes, missing a study-abroad semester, and completion of courses. She had to seek psychological counseling. She has been denied other academic advancements, including an internship with the District Attorney's Office. She has experienced severe psychological distress that has manifest itself in painful physical symptoms.

## IV.  CLAIMS FOR RELIEF

### First Claim for Relief

**(Deliberate Indifference to Sexual Harassment in Violation of Title IX of the Education Amendments of 1972 – Against Defendant CSU Athletics)**

39. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

40. Prior to filing this action, Plaintiff timely, properly and lawfully exhausted all administrative prerequisites, procedures and remedies.

41. A plaintiff must allege four factors to state a claim of school district liability under Title IX. She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999).

42. Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a).

43. Plaintiff is a student at Colorado State University. Plaintiff, as a female, is a member of a protected class that has been historically an object of invidious discrimination.

44. Defendant CSU, through its Deputy Athletics Director, and possibly also through the CSU General Counsel's Office was at all relevant times acting under the color of state law. CSU Athletics is a department within Colorado State University, which itself is a subdivision of the State of Colorado.

45. Since September 5, 2019, Defendant CSU had actual knowledge of, and had been deliberately indifferent to, repeated reports of sexual assault and harassment against Plaintiff by CSU "friends" and active alumni and heavy financial supporters.

46. As a direct and proximate result of Defendant CSU's deliberate indifference, Plaintiff was subjected to repeated sexual assault, sexual harassment, employment discrimination and retaliation.

47. The sexual assault, sexual harassment, discrimination and retaliation against Plaintiff resulted in loss of academic opportunity, as set forth above, and severe and ongoing emotional distress and mental anguish to Plaintiff. This emotional distress has had serious physical manifestations.

48. Defendant CSU's failure to take any action, whatsoever, at the appropriate time to stop the ongoing sexual assault and harassment, despite their obligation to do so, was clearly unreasonable in light of the known facts and circumstances.

49. Plaintiff was subjected to gender-based discrimination that was so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits. To put it bluntly, Defendant CSU and Steve Cottingham elected to protect and shelter men who sexually assault and harass women rather than protecting and sheltering one of its own students. They did this for financial benefit.

50. In addition, Defendant CSU and Mr. Cottingham's failure to preserve and/or report the incidents of sexual assault and harassment to CSU police resulted in the District Attorney's decision to not file charges against Defendant Best and Defendant Schell. Defendant CSU Athletics' decision to destroy video evidence of the assaults is a reprehensible reaction intended to shield its financial donors from accountability and to allow future illegal actions against other young female students.

51. Plaintiff continues to suffer from considerable anxiety and emotional distress regarding her experience, safety and well-being.

52. Plaintiff's rights to attend classes, advance in, and graduate from her chosen educational institution have been violated.

53. Plaintiff has suffered significant injuries and damages as a result of Defendant CSU's and Steve Cottingham's deliberate indifference to its Title IX obligations.

54. Defendants' conduct was the actual and proximate cause of Plaintiff's claimed injuries, damages and losses.

**<u>Second Claim for Relief</u>**

**(Retaliation for Complaint of Sex Discrimination in Violation of Title IX – Against Defendant CSU Athletics)**

55. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

56. The Elements of a Title IX retaliation claim are: (1) protected participation or opposition under Title IX known by alleged retaliator; (2) action or actions disadvantaging persons engaged in protected activities; and (3) causal connection between first two elements, that is, retaliatory motive playing part in adverse actions.

57. Since September 5, 2019, Defendants have had actual knowledge of, and have been deliberately indifferent to, repeated reports of sexual assault and harassment against Plaintiff.

58. When Plaintiff reported the sexual assault Defendant CSU Athletics, Steve Cottingham took no protective action whatsoever.

59. After Defendant CSU Athletics knew of the sexual assaults, it deleted the video recordings of the assaults, coordinated with Defendant Best and Susie Wargin, and Defendant Spectra to attempt to silence Plaintiff. It did not report the sexual assault to police or the District Attorney's office. Mr. Cottingham directed Defendant Spectra to demote Ms. Schiller. Mr. Cottingham also rewarded Defendant Best by giving him a Presidential Suite. Mr. Cottingham also discouraged Plaintiff from reporting multiple sexual assaults to the police. Mr. Cottingham used his position of authority at the

University to intimidate Plaintiff into silence and to force her out of her position as a server. Mr. Cottingham did this for financial gain.

60. Defendant CSU and Mr. Cottingham's retaliation was directed by Defendant Best and Susie Wargin and was a calculated attempt to silence Plaintiff.

61. Mr. Cottingham exploited his position of trust with Plaintiff to keep her quiet and then to terminate her from employment.

62. Mr. Cottingham intentionally exploited a 19-year-old girl for the sexual gratification of financial donors to the football program. Plaintiff is just the latest victim of Defendant Best, Mr. Cottingham, and Defendant CSU.

63. Plaintiff made complaints about the sexual assaults, and when she refused to accept Mr. Cottingham's approval of Defendant Best's groping, she was punished severely through removal and prohibition from areas of the football stadium, denial of access to law enforcement and to the Title IX office, and denial of job opportunities and constructive termination from CSU vendors, namely Defendant Spectra.

64. Defendant CSU's actions through Mr. Cottingham, and likely the General Counsel's Office, were intended punish Plaintiff for complaining about sexual assaults by a financial donor.

65. In fact, Plaintiff was one of several young girls punished for interfering with a well-established practice of Defendant Best and Susie Wargin paying the University for the right to molest young undergraduates. Defendant Spectra and Mr. Cottingham had suppressed other similar complaints before Plaintiff's. Plaintiff is simply the only working undergraduate to hire attorneys. Mr. Cottingham's actions were long-standing, calculated, and intentional.

66. Defendants' conduct was the actual and proximate cause of Plaintiff's claimed injuries, damages and losses.

**Third Claim for Relief**

**(Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964 – Against Defendant Spectra and Defendant Lewis)**

67. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

68. Prior to filing this action, Plaintiff timely, properly and lawfully exhausted all administrative prerequisites, procedures and remedies.

69. Defendants Best, Spectra and Lewis engaged in unlawful, intentional and willful discrimination against Plaintiff on the basis of sex. Defendant Best repeatedly sexually assaulted Plaintiff and Defendants Spectra and Lewis intentionally put her back into the

same situation with him. Defendant Lewis and Defendant Spectra knew of the sexual

assaults, consulted with Defendant CSU Athletics, and then intentionally offered Plaintiff

up to Defendant Best and his rich friends for more sexual assault and harassment.

Plaintiff was just the latest of the young girls Defendant Spectra offered to Defendant

Best before demoting or constructively terminating them. Defendant Spectra and

Defendant Lewis's actions were long-standing, calculated, and intentional.

70. Title VII prohibits a covered employer from discriminating against or discharging "any

individual with respect to compensation, terms, conditions, or privileges of employment,

because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits a

covered employer from limiting, segregating, or classifying any employee in way which

would deprive or tend to deprive any individual or employment opportunities, or

otherwise adversely affect her status as an employee, because of such individual's sex. 42

U.S.C. § 2000e-2(a)(2).

71. At the time that Defendants Spectra and Lewis engaged in discriminatory actions against

Plaintiff, Plaintiff was a member of a Title VII protected class because she is a woman.

Defendants were aware that Plaintiff was a member of a protected class at the time that

she was hired.

72. Defendants Spectra and Lewis discriminated against Plaintiff based on her membership

in a protected class (women). Specifically, Defendants Spectra and Lewis failed to take

any action to prevent further instances of sexual assault and harassment, even after both

Defendants were made aware of the pervasive sexual harassment and assault. Defendants failed to take action against customers who were sexually assaulting Plaintiff because they benefitted financially from the harassment. In addition, Defendants Spectra and Lewis demoted Plaintiff to a lesser position within the organization where Plaintiff would not earn nearly as much income as she was earning as a server. Ultimately, Plaintiff's treatment by Defendants Spectra and Lewis resulted in Plaintiff's constructive termination from her position.

73. Defendant Spectra and Defendant Lewis's aforementioned treatment of Plaintiff constitutes intentional, unlawful sexual discrimination in violation of 42 U.S.C. § 2000e-2(a)(1).

74. Defendants' conduct was the actual and proximate cause of Plaintiff's claimed injuries, damages and losses.

**Fourth Claim for Relief**

**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964 –**

**Against Defendant Spectra and Defendant Lewis)**

75. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

76. Prior to filing this action, Plaintiff timely, properly and lawfully exhausted all administrative prerequisites, procedures and remedies.

77. To state a viable claim for retaliation, a plaintiff must first establish that he or she opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a).

78. Pursuant to Title VII *et seq.*, Defendant Spectra and Defendant Lewis were specifically prohibited from retaliation against Plaintiff because of her opposition to conduct that was prohibited by Title VII.

79. Defendant Spectra and Defendant Lewis engaged in conduct that was prohibited by Title VII when they failed to take any action to prevent further instances of sexual assault and harassment and demoted Plaintiff to a lesser position within Spectra.

80. Plaintiff expressed her opposition to Defendant Spectra and Defendant Lewis's conduct in an email following the October 30, 2019 meeting with Defendants. As previously stated, Plaintiff sent an email to Defendants Spectra and CSU expressing her shock and anger not only that Spectra and CSU Athletics would continue to serve Defendant Best alcohol at future CSU football games, but that Defendant Best would actually be rewarded with an upgraded private seating area to watch games from.

81. At all times relevant hereto, Defendants Spectra and Lewis were fully aware of Plaintiff's Title VII activities.

82. Defendants Spectra and Lewis demoted Ms. Schiller and constructively discharged her because of her complaints.

83. There is a direct causal connection between Plaintiff's protected activities and the unlawful, materially adverse employment action. In addition, there is sufficient temporal proximity between Plaintiff's protected activities and her termination.

84. Defendants Spectra and Lewis engaged in unlawful, direct, intentional, adverse, retaliatory and discriminatory employment actions prohibited by Title VII against Plaintiff because of her protected Title VII activities as specifically described in this Complaint.

85. This intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendants' officials, managers and employees.

86. Defendant Spectra and Defendant Lewis' treatment of Plaintiff constitutes unlawful and intentional retaliation and discrimination in violation of 42 U.S.C. § 2000e-3(a).

**<u>Fifth Claim for Relief</u>**

**(Assault and Battery – Against Defendant Best and Defendant Schell)**

87. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

88. Since September 5, 2019 and through October 5, 2019, Defendant Best has been engaged in a pattern of sexual assault and harassment, including aggressive physical touching on or near Plaintiff's private body parts and threatening verbal statements and harassment.

89. On October 5, 2019, Defendant Schell engaged in sexual assault and harassment against Plaintiff, including aggressive physical touching on or near Plaintiff's private body parts and threatening verbal statements and harassment.

90. During these incidents, Defendants Best and Schell intended to cause harmful physical contact with Plaintiff and actually did cause harmful physical contact with Plaintiff.

91. In addition, Defendants Best and Schell intended to place Plaintiff in fear of offensive or harmful physical contact during these incidents.

92. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in the form of past, present and future emotional distress, humiliation, embarrassment, and great mental pain and suffering. Plaintiff also suffered damages in the form of loss of income, and past, present and future medical expenses.

**<u>Sixth Claim for Relief</u>**

**(Sexual Assault – Against Defendant Best and Defendant Schell)**

93. Plaintiff incorporates by reference herein all preceding allegations set forth in this
    Complaint.

94. Since September 5, 2019 and through October 5, 2019, Defendant Best has been engaged
    in a pattern of sexual assault and harassment, including aggressive physical touching on
    or near Plaintiff's private body parts and threatening verbal statements and harassment.

95. On October 5, 2019, Defendant Schell engaged in sexual assault and harassment against
    Plaintiff, including aggressive physical touching on or near Plaintiff's private body parts
    and threatening verbal statements and harassment.

96. During these incidents, Defendant Best and Defendant Schell intentionally engaged in
    offensive sexual contact or abuse against Plaintiff.

97. In addition, Defendant Best and Defendant Schell, through their conduct, caused a
    reasonable apprehension of offensive sexual contact in Plaintiff.

98. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in
    the form of past, present and future emotional distress, humiliation, embarrassment, and
    great mental pain and suffering. Plaintiff also suffered damages in the form of loss of
    income, and past, present and future medical expenses.

Respectfully submitted on this 4th day of September 2020.

                                 *s/ Sean M. Simeson*

                                 Sean M. Simeson, Esq. (47675)

                                 Baumgartner Law, LLC

                                 300 E. Hampden Ave, #401

                                 Englewood, CO 80013

                                 Phone: (720) 626-9418

                                 Email: sean@baumgartnerlaw.com

                                 *Attorneys for Plaintiff*