IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-02702-RM-SKC

KATELYN SCHILLER,

    Plaintiff;

    v.

THE BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM, BY AND ON BEHALF OF COLORADO STATE UNIVERSITY;
OVATIONS FOOD SERVICES, LP (d/b/a SPECTRA FOOD SERVICES AND HOSPITALITY);
MICHAEL BEST; and
SCOTT SCHELL,

    Defendants.

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION

Plaintiff Katelyn Schiller, by and through the undersigned counsel, hereby files this Motion to Compel Production pursuant to Fed. R. Civ. P. 37(a)(3)(A), as authorized by the Court at the January 5, 2022 discovery conference.

### INTRODUCTION

This Motion seeks an order compelling Defendant CSU to search its employees' mobile devices used for work purposes, and to produce any responsive contents of work-related electronically-stored information ("ESI"), including but not limited to text messages, found on those mobile devices. Because CSU custodians regularly use their personal mobile devices for work purposes, and because those devices are therefore within the possession, custody or control of CSU, Plaintiff respectfully requests this Court grant the Motion.

## FACTUAL BACKGROUND

Plaintiff issued a first set of written discovery requests on Defendant CSU on August 31, 2021. CSU produced responsive content, including electronically-stored information ("ESI") on October 14, 2021. Included among Defendants' ESI production were text messages sent and received by custodian David Crum, CSU's Associate Athletic Director for Development. The messages produced from Mr. Crum's cell phone were exclusively business-related. *See, e.g.*, **Ex. A**, *David Crum-Susie Wargin Text Messages* (messages between Crum and Susie Wargin, CSU alumna and donor, about CSU's investigation into Wargin's husband, Defendant Michael Best); **Ex. B**, *David Crum-Michael Best Text Messages* (messages between Crum and Defendant Best); **Ex. C**, *David Crum-Steve Cottingham Text Messages* (messages between Crum and Deputy Athletic Director Steve Cottingham). These records make clear that CSU employees, including custodians in this case, regularly use their mobile devices to exchange work-related communications.

Conspicuously absent from the records produced were any text messages **sent** by Steve Cottingham, despite the fact Mr. Cottingham led CSU's investigation into Plaintiff's allegations of harassment and despite the fact Mr. Cottingham did in fact exchange text messages relating to the investigation. This omission became especially clear to undersigned counsel when Defendant Spectra produced ESI responsive to Plaintiff's discovery requests, and included a highly probative text chain between Mr. Cottingham and one of Spectra's managers at CSU. *See* **Ex. D**, *Steve Cottingham-Karla Lewis Text Messages*. Plaintiff also discovered that Defendant had not produced any communications from Athletic Director Joe Parker, a key decisionmaker relating to Ms. Schiller's allegations, any emails involving the aforementioned Associate Athletic

2

Director David Crum, or any communications whatsoever from a number of other important custodians who were directly involved in the investigation into Plaintiff's allegations.

In response to these omissions, Plaintiff asked CSU to explain its search methods, including whether CSU had searched any of its custodians' mobile devices for responsive text messages. During a conferral on January 3, 2022, CSU argued that text messages from its custodians' cell phones were not subject to discovery. The parties raised the issue of CSU custodians' text messages during a discovery conference held on January 5, 2022, following which this Court authorized Plaintiff to file this Motion.

## LEGAL ANALYSIS

Federal Rule of Civil Procedure 34 requires production of documents in the "possession, custody, or control" of the party from whom discovery is sought. Fed. R. Civ. P. 34(a). "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control **or has the legal right to obtain the documents on demand.**" *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476-77 (D. Colo. 2007) (emphasis added). Furthermore, "'[c]ontrol' comprehends not only possession, but also the right, authority, or ability to obtain documents." *Id.* "Therefore, Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie." *Id.*

When it comes to documents not actually possessed by a party, but rather possessed by an employee, courts have applied the well-established rule that "[w]here [documents] were created **in connection with the officer's functions as a corporate employee**, the corporation has a proprietary interest in them and the officer has a fiduciary duty to turn them over on demand."

3

*Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) (emphasis added); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 627 (D. Colo. 2007) (applying rule and concluding that "a court could (even) determine that an employer has control over documents maintained by a **former** employee" (parenthesis and emphasis added)); *accord Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448-49 (S.D.N.Y. 2011) ("Courts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession."); *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008) ("In light of the Rule's language, '[a] party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control.").

Numerous courts have discussed the precise question at issue here: whether records in an employee's personal account—or on an employee's personal device—are subject to discovery pursuant to Rule 34. The authoritative cases on this question are a pair of 2013 decisions out of the Southern District of Illinois and the District of Kansas. *See In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, No. 3:12-md-02385, 2013 WL 6486921, at *18 (S.D. Ill. Dec. 9, 2013); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013); *see also* Danielle Richter, *"Bring Your Own Device" Programs: Employer Control Over Employee Devices in the Mobile E-Discovery Age*, 82 TENN. L. REV. 443, 443-44, 447-50 (2015). In *In re Pradaxa*, the court held that communications on employees' personal cell phones used for business purposes were discoverable. *See* 2013 WL 6486921, at *18 ("The defendants raised the issue that some employees use their personal cell phones while on business and utilize the texting feature of those phones for business purposes yet balk at the request of

litigation lawyers to examine those personal phones. The litigation hold and the requirement to produce relevant text messages, without question, applies to that space on employees [sic] cell phones dedicated to the business which is relevant to this litigation.").

The court in *Cotton v. Costco Wholesale Corp.* came to the opposite conclusion regarding employees' personal cell phones, but not because employees' personal cell phones were categorically protected from discovery; instead, the court focused on the fact that the plaintiff had not asserted that the employer "issued the cell phones to these employees, **that the employees used the cell phones for any work-related purpose**, or that [the employer] otherwise has any legal right to obtain employee text messages on demand." 2013 WL 3819974, at *6 (emphasis added).

Subsequent courts have clearly articulated the rule suggested by the *In re Pradaxa* and *Cotton v. Costco* courts, namely that an employee's personal emails and text messages are discoverable if the communications in question were created for work purposes. *See, e.g.*, *State Farm Mut. Auto Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *6 & n.4 (E.D. Mich. Dec. 2, 2020) (stating the rule and holding that "[t]he fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment. As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts. Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits.").

Counsel for Plaintiff is aware of only two cases in the District of Colorado in which this issue has been considered. First, in *Crocs, Inc. v. Effervescent, Inc.*, the court held that employees' personal email accounts used for business purposes were discoverable. *See* No. 06-cv-00605-PAB-KMT, 2017 WL 3891697, at *2 ("[W]hen a company identifies [an employee] as one who has relevant email information, not only the company account but **also all other accounts likely to contain company information** may be searched." (emphasis added)).[1] In *Coates et al. v. Adams County Sheriffs Office et al.*, Judge Varholak recently ordered the Adams County Sheriff's Office, a public entity just like CSU, to search and produce work-related text messages exchanged by deputies on their personal cell phones. *See* **Ex. E**, Minute Order [ECF No. 39], No. 1:20-cv-01936-STV (D. Colo. filed Mar. 25, 2021).

The rule that personal devices or accounts used for business purposes are discoverable is consistent with the well-established rule that business communications are the property of the employer and that the employer thereby has a legal right to obtain such communications. *See, e.g.*, *Cache La Poudre*, 244 F.R.D. at 627. The fact CSU is not a corporation, but instead an entity of the state, is a distinction without a difference. *See* **Ex. E**. Indeed, even if CSU employees' work-related communications are not the *property* of the employer as they are for corporate employers, CSU retains a "legal right to obtain the documents on demand" for a

---

[1] Counsel for CSU asserted in its position statement prior to the parties' January 5, 2022 discovery conference that the *Crocs* case involved "non-party emails that were located on a corporate defendant's server." **Ex. F**, *2022.1.4 Defendants' Position Statement*, at 2. Nothing in Judge Tafoya's order, however, or the party's briefing, makes any suggestion whatsoever that the employees' personal emails were stored on a company server. *See generally* 2017 WL 3891697; **Ex. G**, Crocs, Inc. *Motion to Compel*; **Ex. H**, Crocs, Inc. *Response to Motion to Compel*; **Ex. I**, Crocs, Inc. *Reply to Motion to Compel*. Indeed, every indication is that the records sought, which the court held were discoverable, were **personal** emails stored in **personal** email accounts, i.e., not on the company's servers. *See* 2017 WL 3891697, at *2.

separate reason: namely, they are public records subject to the Colorado Open Records Act, and CSU is required to maintain them as such.

In *Tomlinson*, Judge Hegarty held that although the requested personnel files were in the possession of a third party, the Defendants had control over the files because they had a legal obligation to maintain and produce them pursuant to the Employee Retirement Income Security Act (ERISA). *See* 245 F.R.D. at 477. Similarly, the Colorado Open Records Act (CORA) requires CSU to maintain all electronic communications sent or received by CSU employees in the performance of their public functions. *See Denver Pub. Co. v. Bd. of Cty. Com'rs*, 121 P.3d 190, 199-200 (Colo. 2005) (noting that whether a public employee "sent or received a message while . . . using publicly-owned computer equipment" is not the relevant inquiry as to whether the communication is subject to CORA, and that what matters instead is whether "it was written or maintained in a private capacity" or made "for use in the performance of public functions"); *see also Guy v. Whitsitt*, 469 P.3d 546, 550 n.4 (Colo. Ct. App. 2020) (noting district court's order that plaintiff "was entitled under [CORA] to have access to specific text messages and emails between Town Council members about Town business"). As in *Tomlinson*, here too the court may consider CSU's statutory obligations under CORA as evidence of CSU's control over business-related communications, regardless of whether such communications are maintained on CSU's or its employees' personal devices.

Additionally, Plaintiff notes that CSU has not provided any evidence that its custodians, including but not limited to Deputy Athletic Director Steve Cottingham, used personal devices rather than CSU-owned devices when they exchanged messages relating to Plaintiff's allegations and the ensuing investigation. CSU's Mobile Communications Policy provides that CSU employees have two options with respect to mobile devices: they can either (1) use a mobile

7

device furnished by CSU, which CSU pays in full and over which CSU retains exclusive ownership; or (2) continue to use their personal devices, and if they use such devices for business purposes, they receive a stipend. *See* **Ex. J**, *CSU Mobile Communications Policy*. It is inarguable that if the devices in question here were CSU-issued phones, that fact alone would be sufficient to render their contents under the "possession, custody or control" of CSU. Similarly, if CSU's custodians received a stipend to continue using their personal devices for business purposes, this Court could follow Judge Varholak's ruling in *Coates et al. v. Adams County Sheriffs Office et al.*, *see generally* **Ex. E**.

Ultimately, however, even if CSU's custodians used neither CSU-furnished devices nor CSU-subsidized personal devices, their business-related communications are still discoverable pursuant to Fed. R. Civ. P. 34(a). Under the applicable case law, those business communications are within the "control" of CSU because CSU has a "legal right to obtain the documents on demand" in order to comply with CORA. *Tomlinson*, 245 F.R.D. at 476.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the Motion and order CSU to search its custodians' mobile devices for any business-related communications responsive to Plaintiff's discovery requests.

Respectfully submitted this 12th day of January, 2022.

*s/ Benjamin DeGolia*
Benjamin DeGolia
Matthew Cron
Ciara Anderson
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence St., Suite 100
Denver, CO 80205
bd@rmlawyers.com

mc@rmlawyers.com
ca@rmlawyers.com

*Attorneys for Plaintiff*